# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BECKLEY DIVISION

**ARUN AGGARWAL, PARMLA
AGGARWAL, AMAN AGGARWAL,
EMILY AGGARWAL, ASHWIN AGGARWAL,
PUJA AGGARWAL, ARJUN AGGARWAL,
and RISHI AGGARWAL,**

        **Plaintiffs,**

**v.**                    **CIVIL ACTION NO.:** 5:22-cv-00091

                                **Judge**

**GREENBRIER HOTEL CORPORATION,**

        **Defendant.**

## COMPLAINT

**NOW COME** the Plaintiffs, Arun Aggarwal, Parmla, Aggarwal, Aman Aggarwal, Emily Aggarwal, Ashwin Aggarwal, Puja Aggarwal, Arjun Aggarwal, and Rishi Aggarwal, by and through their counsel, and file this Complaint against Defendant, Greenbrier Hotel Corporation, alleging as follows:

### I. NATURE OF ACTION

1. Plaintiffs seek damages arising from the unlawful, discriminatory actions of Defendant in violation of Section 1981 of the *Civil Rights Act of 1866*, 42 U.S.C. § 1981 and the *West Virginia Human Rights Act* ("WVHRA"), *W. Va. Code* § 5-11-1, *et seq*.

### II. JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked in accordance with its original jurisdiction over cases and controversies arising under federal law pursuant to 28 U.S.C. §1331.

3. The jurisdiction of this Court is invoked over the state law claims alleged herein in accordance with diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between the parties and more than $75,000.00 is in controversy.

4. To the extent diversity jurisdiction would be found to be lacking in this case, this Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C § 1367(a) because these state law claims are substantially related to and form part of the same case and controversy over which this Court assumes original jurisdiction.

5. The United States District Court for the Southern District of West Virginia is the proper venue for this action under 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this judicial district and all or a substantial part of the events giving rise to this action occurred in this judicial district.

### III.  PARTIES

6. Plaintiff Arun Aggarwal is, and was at times relevant hereto, a citizen and resident of North Carolina and is an Indian American.

7. Plaintiff Parmla Aggarwal is, and was at times relevant hereto, a citizen and resident of North Carolina and is an Indian American.

8. Plaintiff Aman Aggarwal is, and was at times relevant hereto, a citizen and resident of North Carolina and is an Indian American.

9. Plaintiff Emily Aggarwal is, and was at times relevant hereto, a citizen and resident of North Carolina and is married to an Indian American.

10. Plaintiff Ashwin Aggarwal is, and was at times relevant hereto, a citizen and resident of North Carolina and is an Indian American.

11. Plaintiff Puja Aggarwal is, and was at times relevant hereto, a citizen and resident of North Carolina and is an Indian American.

12. Plaintiff Arjun Aggarwal is, and was at times relevant hereto, a citizen and resident of North Carolina and is an Indian American.

13. Plaintiff Rishi Aggarwal is, and was at times relevant hereto, a citizen and resident of North Carolina and is an Indian American.

14. Defendant Greenbrier Hotel Corporation ("The Greenbrier") is a West Virginia corporation with its principal place of business located in White Sulphur Springs, Greenbrier County, West Virginia.

## IV. FACTS

15. The Greenbrier operates a hotel and casino located in White Sulphur Springs, West Virginia, which is an establishment that offers its services, goods, facilities and/or accommodations to the general public such that it is a "place of public accommodations" as defined in the WVHRA.

16. The Plaintiffs are a family of Indian Americans from Raleigh, North Carolina who have stayed at The Greenbrier on multiple occasions and engaged in gaming activities at the Greenbrier's Casino.

17. During prior visits to The Greenbrier, there were instances wherein The Greenbrier treated the Plaintiffs differently than its non-Indian American guests.

18. For instance, after the COVID-19 Pandemic began, The Greenbrier strictly enforced a masking requirement against the Indian American Plaintiffs while it allowed Caucasian guests to roam around its property maskless with impunity.

19. Similarly, before entering The Greenbrier's Casino, the Indian American Plaintiffs were strictly required to show identification or other proof they were guests at the hotel, while Caucasian guests were allowed to enter the Casino without being stopped or asked for identification.

20. In or about early September 2021, The Greenbrier offered and Plaintiffs accepted a complimentary two-night stay at The Greenbrier in exchange for bringing a party to the hotel to gamble money in its casino.

21. Upon information and belief, the Greenbrier regularly offers complimentary hotel accommodations to persons known to engage in substantial gaming activities as an inducement to cause such persons to use its casino and from which Greenbrier derives substantial revenues.

22. The Plaintiffs arrived for their complimentary two-night stay at the Greenbrier on Saturday, September 18, 2021, and in accordance with their agreement, the Greenbrier purported to afforded Plaintiffs the complimentary use of a parlor of four guest rooms and other amenities until their check-out date of Monday, September 20, 2021.

23. The party with which the Plaintiffs were traveling included three Caucasians, including two Caucasians who were not related by blood or marriage to any of the Plaintiffs.

24. The first group of Plaintiffs arrived at The Greenbrier in the early afternoon. The others arrived approximately one hour later.

25. Immediately upon their arrival, the Plaintiffs were provided complementary champagne by The Greenbrier.

26. Beginning in the early afternoon, the male Plaintiffs entered The Greenbrier's Casino to engage in gaming activities. Immediately upon their arrival to the Casino, wait staff of

4

The Greenbrier began plying such Plaintiffs with large quantities of alcohol, including service of drinks before Plaintiffs had finished previously-served drinks.

27. By approximately late afternoon, Plaintiffs Arun Aggarwal, Ashwin Aggarwal, Aman Aggarwal, and Arjun Aggarwal were displaying unmistakable signs of heavy intoxication, including slurred speech, glassy eyes, and abnormal gait.

28. Nevertheless, The Greenbrier continued to serve large amounts of free alcohol to the intoxicated Plaintiffs and continued to allow them to draw on their lines of credit and gamble their money away. Even when Emily Aggarwal instructed a waitress just before their dinner reservation that Aman Aggarwal had enough alcohol to drink and requested that the waitress bring water, the waitress brought more alcohol instead.

29. Plaintiffs Ashwin Aggarwal, Aman Aggarwal, and Arjun Aggarwal began incurring substantial gambling losses after they became heavily intoxicated due to the overservice of free alcohol by The Greenbrier's staff.

30. Although members of the Plaintiffs' party were heavily intoxicated due to The Greenbrier's over service of alcohol, they were not unreasonably unruly or disruptive in the casino.

31. After gaming in the Casino, the Plaintiffs went outside to wait on a shuttle bus to transport them a short distance to their 8:30 p.m. dinner reservation at the Sam Sneed Restaurant.

32. The Plaintiffs waited approximately 15 – 20 minutes for the shuttle bus to arrive, evidently due to a shortage of staff.

33. When the shuttle bus finally arrived, Plaintiff Arjun Aggarwal was in the restroom. Plaintiffs asked the bus driver to wait, but he nevertheless abruptly left Arjun behind without discussion or explanation.

34. When the Plaintiffs finally arrived for their dinner reservation at approximately 8:45 p.m., the restaurant's staff falsely claimed that their reservation was at 8:00 p.m. and refused to serve the Plaintiffs because they were purportedly too late.

35. After being refused service at Sam Snead's, the Plaintiffs were able to secure a secondary reservation at The Greenbrier's Prime 44 restaurant. However, when the shuttle bus arrived to transport them there, it was the same driver who then proceeded to refuse the Plaintiffs a ride by saying "absolutely not" and shutting the door in their faces. The driver ultimately got out of the bus and called security on the Plaintiffs without provocation.

36. While the shuttle bus driver refused service to the Plaintiffs, he specifically announced that he would allow five Caucasian men to board the bus, including a Caucasian who was with the Plaintiffs' group (but not related to them by blood or marriage) and was in the bus with them on the ride to Sam Snead's at the time of the disagreement about leaving Plaintiff Arjun Aggarwal behind.

37. The shuttle bus driver's refusal to allow the Plaintiffs to board the bus led to a verbal exchange between the bus driver and a few of the Plaintiffs. When security arrived,[1] Plaintiffs tried to explain that they believed they were being treated differently because of their Indian American heritage, to which one of the security guards responded, "Don't pull the race card."

38. Once the Plaintiffs arrived to their secondary reservation at Prime 44, staff refused to serve any of the Plaintiffs alcohol based upon instructions from The Greenbrier management, even though not all of the Plaintiffs had been previously drinking.

39. After leaving Prime 44, some of the Plaintiffs went back to the Casino to continue their gaming activities and to dance on the dance floor.

---

[1] The driver had called security before the verbal exchange.

40. While in the Casino, a security guard named Jacob Coleman rudely and aggressively admonished Plaintiff Ashwin Aggarwal to wear his mask. When Plaintiff Puja Aggarwal attempted to point out that others in the hotel were not wearing masks, Mr. Coleman aggressively put his hand up in her face to silence her.

41. During this entire stay and on previous occasions, The Greenbrier staff vigorously enforced their mask policy against the Indian American Plaintiffs while Caucasian guests were permitted to walk around freely without masks. One of the Caucasian members of Plaintiffs' group went maskless for the entire stay, but was never admonished like the Indian American Plaintiffs.

42. At some point shortly after re-entering the Casino, security guard Jacob Coleman informed Plaintiff Aman Aggarwal that he had to leave the casino because he and his entire party were being banned from the casino for the night. Aman was assured that the party would be allowed to re-enter the Casino again the next day.

43. Plaintiff Parmla Aggarwal was also refused re-entry into the Casino even though she had not been a participant in the verbal exchanges or other alleged behavior that purportedly led to the ban of the Aggarwal family from the Casino.

44. Some of the Plaintiffs remained in the Casino, but Plaintiffs were later informed these individuals were allowed to stay by mistake, as security had been instructed to ban anyone with the last name Aggarwal from entering the Casino even though some of the Plaintiffs were not participants in any of the alleged behavior from which the ban purportedly resulted.

45. One of the Plaintiffs who was allowed to remain in the Casino was Ashwin Aggarwal. Although he was not permitted to drink alcohol at dinner, the staff in The Greenbrier's Casino continued to ply him with free alcoholic drinks as he was permitted to continue gambling in a heavily impaired state.

46. Later into the night, Plaintiff Puja Aggarwal asked wait staff to bring her husband, Ashwin Aggarwal, coffee instead of alcohol. Nevertheless, the waitress returned with vodka.

47. The Greenbrier permitted Ashwin Aggarwal to gamble in an extremely impaired state until approximately the early morning hours, even extending his credit line from $150,000.00 to $180,000.00. Ashwin Aggarwal ultimately lost the entirety of the $180,000.00, including a substantial sum after he returned to the casino from Prime 44.

48. On Sunday morning, September 19, 2021, Plaintiff Rishi Aggarwal and Sunil Aggarwal, who was a member of the Plaintiffs' traveling party and is biracial with Indian American heritage, were denied entry to the Casino. Sunil Aggarwal had not been present with the rest of the Aggarwal party during any part of the events of Saturday evening.

49. On Sunday morning, The Greenbrier informed Plaintiffs that they were all banned from entering the Casino for the duration of their stay. What's more, the Plaintiffs were informed that their agreed upon complementary stay had been revoked and they were required to vacate the premises within two hours unless they paid for the remainder of their stay. The Plaintiffs had no choice but to quickly pack their belongings and return home.

50. The non-Aggarwal Caucasian members of the Plaintiffs' traveling party were allowed to continue their complimentary stay until the following day and were not banned from the casino during the remainder of their stay despite being present for the behavior upon which the Aggarwal ban/revocation was purportedly based.

51. Some time after the Plaintiffs left the Greenbrier, Plaintiff Aman Aggarwal had a telephone discussion with a representative of The Greenbrier, Steve Johnson, wherein he tried to explain to Mr. Johnson that Plaintiffs were treated poorly based upon their Indian American heritage. However, Mr. Johnson dismissively admonished him not to "play the race card."

52. Upon information and belief, non-Indian American guests of the Greenbrier have engaged in conduct far worse than that alleged against the Plaintiffs, including the use of illegal drugs in a guestroom, and were not denied any of The Greenbrier's amenities or accommodations.

## V. CAUSES OF ACTION

### COUNT I
### Violation of Civil Rights
### in Violation of 42 U.S.C. § 1981

53. Plaintiffs incorporate by reference as if fully set forth herein, the allegations set forth in Paragraphs 1 – 52 above.

54. Plaintiffs are members of a racial minority and/or are married to a member of a racial minority.

55. The Greenbrier intended to discriminate against the Plaintiffs based upon their status as racial minorities and/or their marriage to a member of a racial minority.

56. The Greenbrier discriminated against the Plaintiffs in the making, performance, modification, and termination of contracts, including the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

57. The Greenbrier's adverse actions against the Plaintiffs as alleged herein would not have been carried out but for Plaintiffs' status as racial minorities and/or marriage to a member of a racial minority.

58. As a direct and proximate result of Defendant's actions, Plaintiffs have suffered economic damages in an amount to be determined by a jury.

59. As a direct and proximate result of Defendant's actions, Plaintiffs have suffered and will continue to suffer annoyance, inconvenience, embarrassment, humiliation, loss of dignity, and emotional distress in an amount to be determined by a jury.

60. The damages suffered by the Plaintiffs are the direct and proximate result of conduct carried out by the Defendant with actual malice toward the Plaintiffs and/or a conscious, reckless, and/or outrageous indifference to the health, safety, and welfare of others, including the Plaintiffs. Accordingly, the Defendant is liable to the Plaintiffs for punitive damages in an amount to be determined by the jury.

61. As a direct and proximate result of Defendant's actions, Plaintiffs have suffered and will continue to suffer damages and are entitled to all other legal or equitable relief that this Court may deem appropriate, in an amount to be determined by the jury.

## COUNT II
## Denial of Public Accommodations
## in Violation of the WVHRA

62. Plaintiffs incorporate by reference as if fully set forth herein, the allegations set forth in Paragraphs 1 – 61 above.

63. The Greenbrier is a place of public accommodations as defined by the WVHRA.

64. The Plaintiffs are members of a protected class under the WVHRA based upon their race, color, national origin and/or ancestry and/or their marriage to a member of a protected class based upon race, color, national origin and/or ancestry.

65. The Plaintiffs attempted to avail themselves of the accommodations, advantages, privileges, or services of The Greenbrier, a place of public accommodations.

66. Accommodations, advantages, privileges, and/or services of The Greenbrier were withheld, denied, and/or refused to Plaintiffs.

67. The Greenbrier's decision to withhold, deny, and/or refuse accommodations, advantages, privileges, and/or services were motivated, in whole or in part, by Plaintiffs' race,

color, national origin and/or ancestry and/or their marriage to a member of a protected class based upon race, color, national origin and/or ancestry.

68. The Greenbrier's decision to withhold, deny, and/or refuse accommodations, advantages, privileges, and/or services would not have been made but for Plaintiffs' race, color, national origin and/or ancestry and/or their marriage to a member of a protected class based upon race, color, national origin and/or ancestry.

69. As a direct and proximate result of Defendant's actions, Plaintiffs have suffered economic damages in an amount to be determined by a jury.

70. As a direct and proximate result of Defendant's actions, Plaintiffs have suffered and will continue to suffer annoyance, inconvenience, embarrassment, humiliation, loss of dignity, and emotional distress in an amount to be determined by a jury.

71. The damages suffered by the Plaintiffs are the direct and proximate result of conduct carried out by the Defendant with actual malice toward the Plaintiffs and/or a conscious, reckless, and/or outrageous indifference to the health, safety, and welfare of others, including the Plaintiffs. Accordingly, the Defendant is liable to the Plaintiffs for punitive damages in an amount to be determined by the jury.

72. As a result of Defendant's unlawful discriminatory practices, Plaintiffs are entitled to the costs of litigation, including attorney fees and costs.

73. As a direct and proximate result of Defendant's actions, Plaintiffs have suffered and will continue to suffer damages and are entitled to all other legal or equitable relief that this Court may deem appropriate, in an amount to be determined by the jury.

## COUNT III
## Breach of Contract

74. Plaintiffs incorporate by reference as if fully set forth herein, the allegations set forth in Paragraphs 1 – 73 above.

75. A valid, legally binding contract existed between Plaintiffs and The Grenbrier that was supported by an offer and acceptance, mutual assent, and consideration.

76. Pursuant to the contract, Plaintiffs were promised a complimentary two night stay with meal accommodations at The Greenbrier.

77. The Greenbrier breached its contract with Plaintiffs by revoking the agreed upon complimentary stay after the first night.

78. Plaintiffs incurred damages as a proximate result of The Greenbrier's breach of the contract, including, but not necessarily limited to, the market value of the rooms and accommodations promised for the second night of the stay.

79. The Greenbrier is liable to Plaintiffs for damages that proximately resulted from its breach of the contract.

**WHEREFORE**, the Plaintiffs pray for the following relief:

1. That the Court enter judgment against the Defendant on all counts alleged in this Complaint;
2. All remedies afforded by 42 U.S.C. § 1981;
3. All remedies afforded under the WVHRA;
4. All available common law remedies;
5. Punitive damages;
6. Pre- and post-judgment interest as provided by law; and
7. Attorneys' fees and costs.

**PLAINTIFFS DEMAND A JURY TRIAL**

                                                **ARUN AGGARWAL, PARMLA AGGARWAL, AMAN AGGARWAL; EMILY AGGARWAL, ASHWIN AGGARWAL, PUJA AGGARWAL, ARJUN AGGARWAL, and RISHI AGGARWAL**

                                                By Counsel:

  / s/   Michael P. Addair
Kurt Entsminger (WVSB #1130)
**ESTEP ENTSMINGER LAW GROUP PLLC**
600 Kanawha Boulevard, East, Suite 201
Charleston, West Virginia 25301
Telephone: (304) 357-9200
Facsimile: (304) 357-9201
kentsminger@employmentlawwv.com


Michael P. Addair, Esquire (WVSB # 10561)
**ADDAIR LAW OFFICE PLLC**
600B Prestige Park Dr., Suite 4
Hurricane, WV 25526
Telephone: (304) 881-0411
Facsimile: (304) 881-0342
maddair@addairlawoffice.com

*Counsel for Plaintiffs*

13